**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**AT LONDON**

**CIVIL ACTION NO. 19-292-DLB**

**TAMMY K. SAYLOR**                                                          **PLAINTIFF**


**v.**                              **MEMORANDUM OPINION AND ORDER**


**ANDREW SAUL, Commissioner**
**of the Social Security Administration**                                  **DEFENDANT**

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security.  The Court, having reviewed the record and the parties' dispositive motions (Docs. # 13 and 15), and for the reasons set forth herein, **reverses and remands** the Commissioner's decision.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On September 20, 2016, Plaintiff Tammy Saylor filed an application for Disability Insurance Benefits under Title II and Supplemental Security Income under Title XVI of the Social Security Act alleging disability beginning on September 24, 2011.  (Tr. 317, 318, 446, and 453).  Plaintiff was forty years old at the onset of her disability and alleged in her application that she was unable to work due to a bulging disc, degenerative disc disease, panic disorder, PTSD, neuropathy, thyroid issues, bone spurs, osteoarthritis, depression, high blood pressure, menopause, and breathing problems.   (Tr. 446, 488).   Her application was denied initially on January 24, 2017, (Tr. 271-293, 294-318), and was also denied upon reconsideration on April 7, 2017, (Tr. 319).  At Plaintiff's request, an administrative hearing was conducted, (Tr. 395, 412, 227-248), and on October 3, 2018,

Administrative Law Judge ("ALJ") Joyce Francis found that Saylor was not disabled under the Social Security Act and, therefore, was not entitled to benefits.  (Tr. 184-200).  This decision became the final decision of the Commissioner on October 21, 2019 when the Appeals Council denied Plaintiff's request for review.  (Tr. 1-6).  Plaintiff filed the instant action on December 12, 2019 seeking judicial review of the Commissioner's decision. (Doc. # 1).  The matter has culminated in cross-Motions for Summary Judgment, which are now ripe for adjudication.  (Docs. # 13 and 15).

## II.   DISCUSSION

### A.   Standard of Review

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729-30 (6th Cir. 2007) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)).  "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)).  Courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations.  *Id.* (citing *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).   Rather, the Court must affirm the Commissioner's decision as long as it is supported by substantial evidence, even if the Court might have decided the case differently.  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  In

2

other words, if supported by substantial evidence, the Commissioner's findings must be affirmed even if there is evidence favoring Plaintiff's side.  *Id.*; *see also Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988).  In determining whether the Commissioner's conclusion is supported by substantial evidence, courts "must examine the administrative record as a whole."  *Cutlip*, 25 F.3d at 286.

### B.    The ALJ's Determination

To determine disability, an ALJ conducts a five-step analysis.  *Walters*, 127 F.3d at 529.   Under Step One, the ALJ considers whether the claimant is engaged in substantial gainful activity; Step Two, whether any of the claimant's impairments, alone or in combination, are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether a significant number of other jobs exist in the national economy that the claimant can perform.  *See id.* (citing 20 C.F.R. § 404.1520). The burden of proof rests with the claimant for Steps One through Four.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)).  At Step Five, the burden of proof "shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity."  *Id.* (citing *Bowen*, 482 U.S. at 146 n.5).

Here, at Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 24, 2011—the alleged onset date of the disability.  (Tr. 190).   At Step Two, the ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease, essential hypertension, obesity, affective disorder, and anxiety disorder.  (Tr. 190-191).   The ALJ found that Plaintiff's other

3

impairments were not severe, including hypothyroidism, status post thyroidectomy, diabetes mellitus, and gastroesophageal reflux disease (GERD).  (Tr. 191).  At Step Three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  (Tr. 192-193).

The ALJ then found, at Step Four, that Plaintiff possesses the residual functional capacity ("RFC") to perform "light work" as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b), with the following modifications and limitations:

> [S]he can frequently climb ramps and stairs; can climb ladders, ropes, or scaffolds; and can occasionally stoop and crouch.  Additionally, the claimant can understand and remember simple instruction; can frequently interact with supervisors and coworkers and can occasionally interact with the public; and can adapt to routine work conditions and occasional workplace changes that are gradually introduced.

(Tr. 193-194).  Based on this finding, the ALJ concluded that Plaintiff is unable to perform her past relevant work, (Tr. 198), but went on to find that a significant number of jobs exist in the national economy that Plaintiff is capable of performing, including cleaner, mail sorter, and routing clerk, (Tr. 198-199).  Accordingly, the ALJ concluded that Plaintiff does not qualify as disabled under the Social Security Act from the alleged onset of disability date through the date of her decision.  (Tr. 199-200).

### C.    Analysis

Plaintiff asserts in her Motion for Summary Judgment that the ALJ's opinion is flawed in several ways.  First, Plaintiff argues that the ALJ erroneously concluded that her degenerative disc disease and depression/anxiety disorders do not meet or equal a listing in the Listing of Impairments found in 20 C.F.R., Part 404, Subpart P, Appendix 1.  (Doc. # 13-1 at 4-7).  Second, Plaintiff argues that the ALJ's conclusion that she is not disabled

under the Social Security Act is not supported by substantial evidence for the following reasons: (1) the ALJ improperly discounted the opinion of Plaintiff's treating physician, Dr. Sharon Colton, (2) the ALJ did not properly evaluate her subjective complaints of pain, and (3) the ALJ failed to properly address the report of her consultative examiner Dr. William Rigby.  (*Id.* at 7-10).  Each argument is addressed in turn below.

### 1.    Plaintiff does not meet the Listings of 1.04, 12.04, or 12.06

Plaintiff first argues that the ALJ erroneously found that she did not meet the criteria of Listing 1.04 based on her degenerative disc disease or of Listings 12.04 or 12.06 based on her depression/anxiety disorders.  (Doc. # 13-1 at 4-7).  At Step Three, a claimant has the burden of demonstrating that an impairment meets the requirements of a particular Listing of Impairments, which describe a level of severity that signifies a disability under the Social Security Act.  *See Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1113-14 (6th Cir. 1986); *see also Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009).  A claimant must meet all of the criteria to satisfy a particular Listing. *Rabbers*, 582 F.3d at 653.

An impairment meets Listing 1.04 when the claimant suffers from "disorders of the spine," such as degenerative disc disease, "resulting in compromise of a nerve root . . . or the spinal cord" with:

> A.    Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> B.    Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

5

C.      Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00(B)(2)(b).

20 C.F.R., Part 404, Subpt. P, App'x 1, § 1.04.

Here, the ALJ considered whether Plaintiff met the criteria for Listing 1.04 based on her degenerative disc disease.  (Tr. 192-193).  In doing so, the ALJ concluded that "the medical evidence does not establish the requisite evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis as required under listing 1.04." (Tr. 192).  The ALJ further noted that "there is no evidence that the claimant's back disorder has resulted in an inability to ambulate effectively as defined in 1.00(B)(2)(b)." Without citing to the record, Plaintiff argues that the ALJ improperly discounted her subjective complaints of pain and the degree to which Plaintiff's pain limits her mobility. (Doc. # 13-1 at 4-5).  Plaintiff alleges that "[t]he physical limitations of the Plaintiff as it relates to her daily living activities are clearly noted throughout the Plaintiff's medical records" and "[t]hat, combined with the Plaintiff's testimony, clearly show that the Plaintiff has a limitation of motion which meets Listing 1.04." (*Id.* at 5).

Yet, Plaintiff has not argued how evidence related to her pain and mobility demonstrates that she meets the criteria of Listing 1.04, including that she specifically suffers from nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis.  Nor does Plaintiff supply any citations to her medical records in support of her argument that she meets the Listing's additional requirements.  Saylor has the burden of proving that she had an impairment that medically equals a Listing. *See Lusk v. Comm'r of Soc. Sec.*, 106 F. App'x 405, 411 (6th Cir. 2004).  In order to meet this burden, Plaintiff "must present

specific medical findings that [demonstrate that her] impairment meets the applicable impairment or present medical evidence that describes how [her] impairment is equivalent to a listed impairment." *Id.* Having failed to direct the Court's attention to which aspects of her medical records support a finding that she meets the criteria of Listing 1.04, this argument fails as insufficiently developed. *Cf. Palatka v. Savage Arms, Inc.*, 535 F. App'x 448, 460 (6th Cir. 2013) (finding argument failed on appeal where the plaintiffs failed to support their argument with citations to the record).

Plaintiff does vaguely reference her "long history of severe back pain" and "medical records" noting that she can only wash dishes sitting down and becomes "all but incapacitated" doing other simple activities like cleaning her bathroom. (Doc. # 13-1 at 4). Based on Plaintiff's summary of the medical evidence in the introductory paragraphs of Plaintiff's Motion, the Court assumes Plaintiff is referring to the treatment records of Dr. Sharon Colton, Plaintiff's primary care doctor. (*See Id.* at 3-4). These records demonstrate that Plaintiff suffered from chronic back pain, (*see* Tr. 748-755, 797), but do not contradict the ALJ's finding that Plaintiff failed to demonstrate nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis under the Listing. Further, as discussed more fully below, the ALJ properly considered Plaintiff's subjective complaints of back pain in accordance with the regulations. (*See* Part II.C.2.b, *infra.*). Accordingly, the Court finds no error with respect to the ALJ's finding that Plaintiff's degenerative disc disease did not meet all of the criteria of Listing 1.04.

Plaintiff also argues the ALJ erred in concluding she does not meet the criteria of Listing 12.04 (depressive disorders) or 12.06 (anxiety disorders) based on her mental health issues. (Doc. # 13-1 at 5-7). For each category, a claimant must meet the criteria

of paragraphs A and B or paragraphs A and C.  20 C.F.R., Part 404, Subpt. P, App'x 1, § 12.00(A)(2).  The ALJ found that Saylor failed to meet the criteria of both paragraphs B (impairment-related limitations) and C (evidence showing that an impairment is "serious and persistent"), and thus, failed to demonstrate that her mental impairments met or equaled those described in Listing 12.04 or 12.06.  (Tr. 192-193).

In order to satisfy the paragraph B requirements for Listing 12.04 or 12.06, a claimant must provide evidence of a mental impairment that results in "extreme" limitation of one or "marked" limitation of two of the following areas of mental functioning: (a) understand, remember, or apply information; (b) interact with others; (c) concentrate, persist, or maintain pace; and (d) adapt or manage oneself.  20 C.F.R., Part 404, Subpt. P, App'x 1, § 12.00(A)(2)(b).  A "marked" limitation means that a claimant's functioning in a particular area "independently, appropriately, effectively, and on a sustained basis is seriously limited."  *Id.* at § 12.00(F)(2)(d).  An "extreme" limitation refers to when a claimant is "not able to function in this area independently, appropriately, effectively, and on a sustained basis."  *Id.* at § 12.00(F)(2)(e).

The ALJ found that Saylor suffers from a mild limitation in understanding, remembering, or applying information; moderate limitation in interacting with others; moderate limitation in concentrating, persisting, or maintaining pace; and moderate limitation in adapting or managing oneself.  (Tr. 193).  A moderate limitation means a claimant's functioning in an area on a sustained basis is "fair."  20 C.F.R., Part 404, Subpt. P, App'x 1, § 12.00(F)(2)(c).  The ALJ reasoned as follows:

> The claimant reported that she is separated from her husband and lives with her son.  She also reported difficulty sleeping, dressing, and bathing but admitted that she is able to manage her personal care independently.  She needs some reminders for medication and hygiene and she denied doing

8

any significant cooking and cleaning.  However, the overall record suggests the claimant could prepare simple meals and do light cleaning and washing if she did not have family members to assist.  She does not drive or grocery shop but she is able to get rides from her family and she attends church weekly.  She reported some problems getting along with others and dealing with stress and changes in routine.  However, she is able to attend her regular treatment appointments, count change to purchase items in the store, and sustain concentration for watching television most of the day (Exs. B4E, B6E, B10E, B11E, B22F, and Hearing Testimony).

(Tr. 193).

Plaintiff argues that evidence of multiple panic attacks per week and anxiety exacerbated by interacting with others supports at least a finding of a marked limitation interacting with others.  (Doc. # 13-1 at 6).  Plaintiff also clarifies that she testified at the hearing that she only attends church occasionally, rather than weekly, and argues that evidence of her church attendance cannot overcome the other evidence in the record of the severity of her anxiety.  (*Id.*).  In addition, Plaintiff asserts that based on her treatment records and the consultation notes of Dr. Baggs, she has demonstrated a marked limitation in concentration.  (*Id.* at 6-7) (citing Tr. 610-611).  Finally, Plaintiff argues that she has at least a moderate limitation in her ability to adapt to normal workplace pressures based on Dr. Baggs' finding that Plaintiff's ability to adapt was "moderately less to possibly much less" than the average person.  (*Id.* at 7) (citing Tr. 611).

The only medical records Plaintiff cites to in support of her arguments regarding Listings 12.04 and 12.06 are the records from her consultation with Dr. Baggs in 2012 (Tr. 610-611).  The ALJ acted properly in not considering these records in her opinion regarding the severity of Plaintiff's mental impairment, as they were outside the relevant decision period.  (*See* Tr. 198); *see also Sadler v. Comm'r of Soc. Sec.*, No. 18-11689, 2019 WL 4892419, at *7 (E.D. Mich. Aug. 16, 2019) (noting that medical records outside

9

the relevant period are less relevant); *cf. Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 845 (6th Cir. 2004) ("Evidence of disability obtained after the expiration of insured status is generally of little probative value.").

Plaintiff previously filed an application for disability benefits under the Social Security Act alleging disability as of September 24, 2011 that was denied on June 24, 2013 and became final on September 5, 2014. (Tr. 187-188, 252-266). Plaintiff filed the instant application on September 20, 2016, again alleging disability beginning on September 24, 2011. (Tr. 317, 318, 446, and 453). The ALJ properly applied the doctrine of res judicata to the prior determination but gave a "fresh look" to Plaintiff's disability status during the unadjudicated period beginning with her new application in September 2016. (Tr. 187-188); *see Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997) (holding that res judicata applies to a prior administrative decision absent new and additional evidence); *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 933 (6th Cir. 2018) (clarifying that the res judicata principle from *Drummond* applies when a claimant files a second application for *the same time period* but does not bind an ALJ considering a new, unadjudicated period). Plaintiff's current attempt to rely on her medical records from 2012 to contest the ALJ's determination regarding the severity of her mental impairments from 2016 forward is therefore unpersuasive.[1] The ALJ instead relied on Plaintiff's more recent functional reports and the medical opinions of Drs. Rigby, Culter, and Barnfield, which provide substantial support for her conclusion regarding the severity of Plaintiff's depression and anxiety. (Tr. 193, 196-197).

---

[1]    Plaintiff does not challenge the ALJ's application of res judicata with respect to the first adjudication period.

Plaintiff's other argument based on her testimony that she only occasionally attends church and does not do her own grocery shopping due to her anxiety do not sufficiently call into question the ALJ's finding regarding the severity of her mental impairments.  *See Lusk*, 106 F. App'x at 411 (noting that Plaintiff "must present *specific medical findings* that [demonstrate that her] impairment meets the applicable impairment or present medical evidence that describes how [her] impairment is equivalent to a listed impairment") (emphasis added).

### 2.   *Substantial evidence*

Plaintiff also argues that the ALJ's overall determination that she is not disabled under the Social Security Act is not supported by substantial evidence.  (Doc. # 13-1 at 7-10).  More specifically, Plaintiff asserts that the ALJ did not properly weigh the opinion of treating physician, Dr. Colton, did not properly consider Plaintiff's subjective complaints of pain, and did not give adequate consideration to the opinion of examining consultant Dr. Rigby.  (*Id.*).

### a.   *The ALJ did not provide good reasons for discounting Dr. Colton's opinion.*

First, Plaintiff asserts that the ALJ did not give proper weight to the opinion of her treating physician, Dr. Sharon Colton.  (*Id.* at 8-9).  Plaintiff specifically refers to a Medical Assessment of Ability to Work form that Dr. Colton filled out in October 2016 in which she opined that Plaintiff can lift only ten pounds occasionally and two pounds frequently, walk for one hour in an eight-hour day (thirty minutes uninterrupted), and sit for six hours in an eight-hour day (twenty minutes uninterrupted).  (Tr. 940-942).  Dr. Colton further reported that Plaintiff can only occasionally climb, balance, stoop, crouch, kneel, and crawl.  (Tr. 941).  Dr. Colton's opinion was based on an MRI from 2011 indicating bilateral joint

sclerosis, a herniated disc at L5-S1, facet joint changes, osteophyte formation at L4-5; as well as Plaintiff's osteoarthritic knee, polyneuropathy, decreased range of motion, and chronic pain.  (Tr. 940).

It is well-settled that the degree of weight afforded to a particular medical opinion depends on the physician's classification as either a nonexamining source, a nontreating (but examining source), or a treating source.  *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007).  As the court explained in *Smith*:

> A "nonexamining source" is "a physician, psychologist, or other acceptable medical source who has not examined [the claimant] but provides a medical or other opinion in [the claimant's] case."  A "nontreating source" (but examining source) has examined the claimant "but does not have, or did not have, an ongoing treatment relationship with" her.  A treating source, accorded the most deference by the SSA, has not only examined the claimant but also has an "ongoing treatment relationship" with her consistent with accepted medical practice.

*Id.* (quoting 20 C.F.R. § 404.1502) (internal citations omitted).

Generally speaking, the SSA "give[s] more weight to the medical opinion of a source who has examined [the claimant] than to the medical opinion of a medical source who has not examined [her]."  20 C.F.R. § 404.1527(c)(1).  Moreover, an ALJ must give the medical opinion of a "treating physician controlling weight as long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence' in the record."  *Fox v. Comm'r of Soc. Sec.*, 827 F. App'x 531, 536 (6th Cir. 2020) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  When an ALJ does not give a treating physician's medical opinion controlling weight, she should consider the following factors in determining how much weight to give the opinion: "the length of the treatment relationship and the frequency of examination, the nature and

extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Id.* at 537 (quoting *Blakey v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1527(c)(2)(i)-(ii), (3)-(6). An ALJ must give "good reasons" for giving a treating physician's opinion less than controlling weight. 20 C.F.R. § 404.1527(c)(2).

"The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases"; this is particularly important "in situations where a claimant knows that his physician has deemed him disabled and therefore 'might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" *Wilson*, 378 F.3d at 544 (quoting *Snell v. Apfel*, 177, F.3d 128, 134 (2d Cir. 1999)). "The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.*

As part of the good-reasons requirement, the ALJ "must [ ] provide an analysis of the [previously-noted] factors under 20 C.F.R. § 404.1527(c)." *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 552 (6th Cir. 2020) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 245-46 (6th Cir. 2007)). Additionally, "an ALJ may not summarily discount a treating-source opinion as not well-supported by objective findings or being inconsistent with the record without identifying and explaining how the substantial evidence is purportedly inconsistent with the treating source opinion." *Id.* (citing *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376-77 (6th Cir. 2013); *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010)). Moreover, an ALJ may not discount the opinion of a treating

physician without explanation because of "the existence of a contrary conclusion by a different physician."  *Id.* (citing *Hensley v. Astrue*, 573 F.3d 263, 266-67 (6th Cir. 2009)).

Here, the ALJ gave the opinion of Plaintiff's treating physician, Dr. Colton, only "little weight," finding Dr. Colton's opinion to be "grossly inconsistent" with the examination findings of independent examining consultant, Dr. Ravi Jayavarapu.  (Tr. 197).  The ALJ also discounted Dr. Colton's opinion because she found it to be inconsistent with Dr. Colton's own examination findings, "which show no signs of gait disturbance or motor or sensory loss."  (Tr. 197-198) (citing Tr. 746-748).

By contrast, the ALJ gave the opinions of examining consultant, Dr. Jayavarapu, and non-examining consultant, Dr. Donna Sadler, "great weight."   (Tr. 197).   Dr. Jayavarapu opined that Plaintiff would have mild to moderate difficulty kneeling, squatting, and lifting and carrying heavy objects.  (Tr. 197) (citing Tr. 1024).  Dr. Sadler found that Plaintiff could perform light work with frequent climbing of ramps and stairs but only occasional crouching, stooping, and climbing ladders, ropes, and scaffolds.  (Tr. 197) (citing Tr. 339).   The ALJ found these opinions to be consistent with Dr. Jayavarapu's examination findings and consistent with Plaintiff's primary care treatment records, "which show subjective reports of pain, but no objective signs of gait disturbance or motor or sensory loss."  (Tr. 197) (citing Tr. 1204-1206).

The ALJ's reasoning for discounting Dr. Colton's opinion is insufficient.  First, it is not clear why the ALJ concluded that Dr. Colton's opinion was "grossly inconsistent" with the examination findings of non-treating physician, Dr. Jayavarapu.  Dr. Jayavarapu's examination of Plaintiff indicated normal posture and gait, an ability to ambulate around the room unassisted and at a normal pace, and "mild difficulty" getting on and off the

examination table.  (Tr. 1022).  His report also noted 5/5 strength bilaterally in both upper and lower extremities with intact sensation.  (Tr. 1023).  At the same time, Dr. Jayavarapu reported, in general terms, that Plaintiff could not kneel, squat, or heel/toe or tandem walk "without difficulty."  (Tr. 1023).  And an examination of Plaintiff's range of motion showed that her lumbar spine flexion-extension was limited to zero to seventy degrees, with lateral flexion limited to twenty degrees on both sides, and straight-leg raises resulting in low back pain at seventy degrees.  (Tr. 1023, 1026).

These findings, indicating difficulty kneeling, squatting, etc. and some loss of range of motion do not contradict Dr. Colton's more specific opinion that Plaintiff could only occasionally climb, balance, stoop, crouch, kneel, and crawl.  (Tr. 941).  Additionally, Dr. Jayavarapu noted that Plaintiff could walk around the room, but he did not offer an opinion on how many hours Saylor could walk per day or at any given time.  Saylor's ability to walk briefly around an exam room, therefore, does not contradict Dr. Colton's opinion that Plaintiff could only walk for one hour in an eight-hour work day and for only a half hour at a time.  (Tr. 940).  As the ALJ notes, Dr. Jayavarapu's observation of normal gait and strength are *consistent* with Dr. Colton's treatment records which similarly do not indicate abnormal gait or motor/sensory loss.  (Tr. 197).  Yet, the absence of evidence of gait disturbance or motor/sensory in the record does not *contradict* Dr. Colton's opinion regarding Plaintiff's physical abilities, which she based on an MRI indicating spine degeneration and resulting chronic pain.  (Tr. 940).  The ALJ did not consider the consistency of Dr. Colton's opinion with the MRI.[2]  Dr. Jayavarapu did not comment on

_____

[2]     At another point in the opinion, the ALJ states "[t]here is no radiographic imaging in the record showing significant degeneration."  (Tr. 196).  However, the ALJ does not expressly reference the MRI or explain how she reached that conclusion in light of Dr. Colton's assessment of the MRI.

any MRIs of Plaintiff's spine, nor did his examination involve an assessment of Plaintiff's pain levels.  Thus, on the Court's review, Dr. Jayavarapu's report appears consistent with and complementary to Dr. Colton's report, and does not directly contradict her findings, which were based on objective evidence not considered by Dr. Jayavarapu.  For similar reasons, it is not apparent how Dr. Colton's opinion is inconsistent with her own treatment records, which indicate that Plaintiff suffers from chronic lower back pain and sciatica, for which she proscribed oxycodone.  (*See, e.g.*, Tr. 746-748).

Thus, for the reasons stated above, the ALJ did not adequately explain her conclusion that Dr. Colton's opinion was inconsistent with her own treatment records or Dr. Jayavarapu's examination findings.  In addition, the ALJ did not consider the nature and extent of Dr. Colton's treatment relationship, as required by the regulations, which spanned from at least June of 2012 to October of 2016, with appointments occurring every few months during that period.  (Tr. 746-871).; *Hargett*, 964 F.3d at 552.  As the ALJ has failed to provide "good reasons" for discounting Dr. Colton's opinion, this matter must be reversed and remanded for further proceedings consistent with this opinion.[3]

### b.    The ALJ properly considered Plaintiff's subjective complaints of pain.

Plaintiff next argues that the ALJ did not properly evaluate her subjective complaints of pain.  (Doc. # 13-1 at 9).  Plaintiff asserts that the ALJ improperly discredited

---

[3]      Courts may affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing."   42 U.S.C. § 405(g).   Benefits are generally awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits."  *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).   Here, the Court finds that the evidence of disability is not overwhelming in light of the differing medical opinions in the record and finds remand appropriate in order to give the ALJ an opportunity to reconsider the weight that should be afforded to Dr. Colton's opinion.

her complaints of pain based on the fact that Plaintiff's treating physician only prescribed what the ALJ characterized as "conservative" treatment for her back pain.  (*Id.* at 5).  To assess a claimant's subjective complaints of pain or other symptoms, "the ALJ must [first] determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged."  *Grames v. Comm'r of Soc. Sec.*, 815 F. App'x 820, 825 (6th Cir. 2019) (alteration in original) (quoting *Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011); SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017)).  Second, "[t]he ALJ must consider the objective medical evidence and the claimant's reported daily activities, as well as several other factors, to evaluate the intensity, persistence, and functional limitations of the claimant's symptoms."  *Id.* (citing *Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 474 (6th Cir. 2014); 20 C.F.R. § 404.1529(c)(1)-(3); SSR 16-3p, 2017 WL 5180304, at *4, *7-8).  Courts "give great deference to the ALJ's credibility determination as long as it was supported by substantial evidence."  *Tweedle v. Comm'r of Soc. Sec.*, 731 F. App'x 506, 507 (6th Cir. 2018).

Here, the ALJ acknowledged Plaintiff's claim that she is unable to work due, in part, to degenerative disc disease causing lower back pain, neck pain, diffuse joint pain, and numbness and tingling in her extremities.  (Tr. 194).  As noted by the ALJ, Plaintiff first injured her back in a motor vehicle accident in 2004 and has, since then, experienced chronic and worsening back pain with occasional flares and chronic radiculopathy.  (*Id.*).  Yet, the ALJ went on to conclude that "the intensity, persistence, and limiting effects of the claimant's symptoms are in excess of those that can be reasonably supported by the objective evidence of record."  (*Id.*).  The ALJ reasoned that although Plaintiff consistently

reported moderate to severe back pain, her primary care doctor "prescribed only conservative treatments, including pain medication, physical therapy, steroid injections, ice, heating pad, and TENS unit." (Tr. 195). Relevant to the ALJ's decision was the fact that Plaintiff had not received surgical interventions for her back or sought specialized orthopedic treatment. (*Id.*). While Plaintiff takes issue with the ALJ's characterization of her treatment as "conservative," courts have found that treatment regimens consisting largely of pain medication to be appropriately characterized as such. *See Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 806 (6th Cir. 2011); *Dinkins v. Comm'r of Soc. Sec.*, No. 1:13-cv-373, 2014 WL 1270587, at *11 (N.D Ohio Mar. 26, 2014) (characterizing treatment including narcotic pain medication as conservative). Thus, the ALJ's reasoning discounting Plaintiff's complaints of pain is not flawed in that respect.

The ALJ also considered other objective medical evidence to support her finding that Plaintiff's subjective complaints of pain were not fully supported. This included Plaintiff's treatment records which described her pain as controlled with medication and indicated tenderness and limited range of motion, but no gait disturbance or motor/sensory loss. (Tr. 195) (citing Tr. 746-748). In addition, the ALJ considered Dr. Jayavarapu's examination and a lumbar CT scan from 2017, following a second car accident, showing no fractures and good alignment. (*Id.*) (citing Tr. 1021-1024, 1206). Moreover, the ALJ took into account Plaintiff's testimony regarding her daily activities, finding that her testimony supported not more than moderate restriction of daily living. (Tr. 196). Thus, the ALJ complied with the two-step procedure outlined in the regulations, and her opinion regarding Plaintiff's credibility and subjective complaints of pain was supported by substantial evidence.

### c.    *The ALJ properly considered Dr. Rigby's opinion.*

Finally, Plaintiff contests the ALJ's decision by arguing that the ALJ failed to properly address the report of consultative examiner, Dr. William Rigby, who found she had both a marked impairment in her ability to maintain social interactions with supervisors, friends, and the public and a marked impairment in her ability to adapt and respond to the pressure of normal day-to-day work activity.   (Doc. # 13-1 at 10). According to Saylor, the ALJ "just completely ignored this uncontradicted independent opinion of the Social Security Administration Consultative Exam without setting forth any reasons to not adopt these uncontradicted findings."  (*Id.*).

As discussed above, the SSA generally "give[s] more weight to the medical opinion of a source who has examined [the claimant] than to the medical opinion of a medical source who has not examined [her]."  20 C.F.R. § 404.1527(c)(1).  Yet, unlike with treating physicians, an ALJ need not provide "good reasons" for discounting the opinions of nontreating physicians, and instead "weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability."  *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)).

Contrary to Plaintiff's argument, the ALJ did consider Dr. Rigby's 2016 report, but assigned his opinion only partial weight.  (Tr. 196-197).  The ALJ properly weighed Dr. Rigby's report against the reports of state consultants, Drs. Laura Cutler and Kay Barnfield, finding Dr. Rigby's conclusions to be inadequately supported and inconsistent. The ALJ also noted that Dr. Rigby examined Plaintiff on only one occasion.  (Tr. 197). The ALJ also found Dr. Rigby's opinion to be internally inconsistent as he reported that Plaintiff had moderate limitations sustaining concentration and persistence and marked

difficulty with social interactions and adapting to normal work pressures, but at the same time found her mental status "grossly intact."   (*Id.*) (citing Tr. 1070).   Further, the ALJ discounted Dr. Rigby's opinion because she found it to be based largely on Plaintiff's subjective report of symptoms and limitations, which he merely accepted at face value. (*Id.*).   Moreover, unlike Dr. Rigby who found marked limitations in Plaintiff's abilities with respect to social interactions and adapting to changes, Drs. Cutler and Barnfield opined that Saylor was only limited to occasional contact with the public and occasional, gradual introduction to changes in routine.  (Tr. 196-197) (citing Tr. 289-290, 340-341).  The ALJ also found these opinions to be consistent with Dr. Rigby's examination findings and Plaintiff's primary treatment records.  (Tr. 197) (citing Tr. 747).  Thus, the ALJ properly considered Dr. Rigby's opinion by applying the relevant factors outlined in the regulations. As Dr. Rigby was a non-treating source, no more was required.

## III.   CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1)    Plaintiff's Motion for Summary Judgment (Doc. # 13) is hereby **GRANTED**;

(2)    Defendant's Motion for Summary Judgment (Doc. # 15) is hereby **DENIED**;

(3)    This action is hereby **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g) with instructions to adequately explain the treatment of Dr. Colton's opinion, consistent with this Memorandum Opinion and Order; and

(4)    A Judgment will be entered contemporaneously herewith.

This 18th day of March, 2021.



Signed By:

*__David L. Bunning__*

**United States District Judge**

J:\DATA\SocialSecurity\MOOs\London\19-292 Saylor MOO.docx